ROY E. BLODGETT *v.* VICTOR V. LAWRENCE ET UX.

January Term, 1915.

Present:   POWERS, C. J., WATSON, TAYLOR, SLACK, AND HEALY, JJ.

Opinion filed May 6, 1916.

*Homestead—Sole Deed of Husband—Abandonment—Question of Fact—Sufficiency of Evidence—Review—Presumptions—Findings.*

A husband's sole deed of his real estate that includes his homestead is void as to the homestead.

Whether a homestead is kept or abandoned as such is a question of fact, largely determined by the intention of the housekeeper or head of the family, and the finding of the trier in that regard is not reviewable if supported by evidence.

The fact that, after the destruction by fire of his dwelling house on his premises that included his homestead, a husband with the

consent and approval of his wife executed his sole lease of the premises for two years, taken in connection with other facts, is evidence of an abandonment of the homestead.

Every reasonable intendment is to be made on appeal in support of the decree below, and so where the record is fairly susceptible of two constructions, one sustaining and the other subverting the decree, that will be taken and not this.

In a suit against husband and wife to foreclose a mortgage of real estate wherein defendants claimed a homestead, in support of the decree it will be presumed on appeal, from the statement in the decree adjudging "that no homestead right or interest is outstanding in either of the defendants against the right of the orator," that the chancellor found as a fact that the husband had abandoned the homestead at the time the mortgage was given.

In a suit against husband and wife to foreclose a mortgage of real estate wherein defendants claimed a homestead, evidence *held* to support a finding that the husband had abandoned the homestead at the time the mortgage was given.

APPEAL IN CHANCERY. Proceeding to foreclose an equitable mortgage on real estate wherein defendants claimed a homestead. Heard on the pleadings and finding of facts by the Chancellor, at the June Term, 1914, Caledonia County, *Butler,* Chancellor. Decree for the plaintiff. The defendants appealed.

The findings of the chancellor reveal the following facts:

June 14, 1912, the defendant, Victor V., executed and delivered to the orator a quitclaim deed, which should be treated in equity as a mortgage, covering the premises described in the bill. The defendant, Victoria, wife of Victor, not having joined in this deed, the defendants say it was void, claiming that when it was made, the premises constituted their homestead.

Ethel S. Lawrence, daughter of the defendants, formerly owned said premises and on the 13th day of August, 1906, she gave a mortgage to Ephraim Blodgett for $300, as a part of the purchase price of said premises. Upon this, immediately prior to the giving of the quitclaim deed in question, there was due $150. The mortgage was received in evidence without objection. Ephraim Blodgett was dead. The orator was administrator of his estate, and on the 3rd day of August, 1912, as such administrator, he discharged said mortgage.

August 15, 1908, Ethel S. Lawrence deeded the premises in question to the defendant, Victor V., and from that time to January, 1912, the defendants occupied the dwelling house and outbuildings thereon and carried on the farm as their homestead. They had no other real estate. January 20, 1912, the dwelling house on the premises was destroyed by fire and the defendants were compelled to go elsewhere to live. They stored however, a stove and a portion of their household furniture and clothing in the henhouse and barn, situated on the premises. Afterward in May of the same year they went to Rutland to live. They returned to Waterford, where the premises in suit are, in March, 1914.

April 22, 1912, the defendant, Victor V., with the consent and approval of his wife, leased the premises to his brother by a written instrument received in evidence, in the execution of which, the defendant, Victoria, did not join. This lease was for the period of two years from its date. In the lease, Victor reserved the hay loft in the ''old part'' of the barn and some old hay was left therein.

June 14, 1912, the defendant, Victor, executed and delivered to the orator a quitclaim deed of the premises described in the bill.

The deed was given to secure the orator for the sum of $600, and at the time of its execution, it was agreed between the orator and the defendant, Victor, that the latter might redeem the premises for the sum of $600 and interest, at the expiration of the lease hereinbefore mentioned. Subsequently, the parties signed a memorandum of this agreement which was received in evidence without objection. The sum of $600 secured by the quitclaim deed, was made up as follows: the defendant, Victor, owed the orator a store bill, contracted during the previous year amounting to $165. He agreed to pay and did pay a bill owed by Victor V. to another person, amounting to $23. He paid Victor V. $262 and the remaining $150 of the $600 was the amount due on the old mortgage; when the defendant, Victor, made the lease hereinbefore referred to, the lessee gave him two notes of $75 each, as rent and subsequently Victor turned these notes over to the orator as administrator of Ephraim Blodgett's estate. These notes of the lessee, when paid, were to satisfy the Ethel Lawrence mortgage above referred to, which was then outstanding and unsatisfied to the amount of

$150. At the time the quitclaim deed in question was made, the orator surrendered the two notes of the lessee because the balance of $150, secured by the Ethel S. Lawrence mortgage was included in the $600, which the quitclaim deed was given to secure. These notes made by the lessee were surrendered at the request of the defendant, Victor V., the orator relying upon said quitclaim deed as his security, and having no knowledge that a homestead was claimed to exist in the premises. The defendants have never paid the orator the $600 or any part thereof, and that amount, at the time the bill was brought and at the time the findings were made by the Chancellor was due and owing from the said defendant, Victor V., to the orator.

After moving to Rutland in May, 1912, the defendant, Victor, worked as a carpenter and then leased and operated a hotel from Nov., 1912 to Nov., 1913. In March, 1914, the defendants returned to Waterford and went into possession of the premises, commenced to grade the cellar, cut timber and prepared for the rebuilding of the dwelling house thereon, claiming the premises as a homestead. When they returned, they repaired the hen house, which was a building 12 by 16 feet in size, and built a small addition 10 by 12 feet in size, in which they resided while beginning operations to rebuild. The premises described are what is known as "lease land" with an annual rental of $15.08 reserved to the town of Waterford. At the date of the findings, three years' rent was due and unpaid.

Neither at the time of the making of the quitclaim deed, nor after, until the defendants returned to Waterford, did they make any claim to the premises as a homestead to the orator and the orator had no knowledge, until some time subsequent to their return, that any such claim was to be made.

The $150 note secured by the Ethel S. Lawrence mortgage was never paid to the orator, but was surrendered to Victor V. on the 7th of May, 1914, by the orator at the defendants' request, with the knowledge and approval of Victoria or her solicitors. The orator then relied upon the quitclaim deed as security, but knew that the defendants were claiming a homestead in the premises.

The defendant, Victor V., intended to redeem the premises by paying the $600 and he and his wife intended, as soon as they were financially able to do so, to return and rebuild the

dwelling house and occupy the premises as their homestead, but the orator had no knowledge of such purpose.

There was no evidence that the defendant, Victoria, knew of the existence of the quitclaim deed, until shortly before she returned from Rutland.

The Chancellor finds that the entire premises, without the dwelling house were probably worth from $750 to $1,000.

The Chancellor made a decretal order, in which it is stated that it had been made "to appear that the allegations in said bill of complaint are true, except so far as modified by said finding of facts * * * defendants' first request being treated as granted and the facts found as therein requested, except so far as modified by the facts found by the Chancellor."

An examination of the bill discloses nothing of importance not covered by the finding.

The defendants' first request was as follows: "the defendants are husband and wife and have several children, one of whom, a boy of fifteen, always has and is now living with the defendants."

In the decretal order, it is ordered, adjudged and decreed that the quitclaim deed was intended for and was in equity, a mortgage, that no homestead right or interest is outstanding in either of the defendants, as against the rights of the orator and that the defendants may redeem by paying for the benefit of the orator, $600 and interest. After the filing of this order, the defendants appealed.

*Dunnett & Leslie* for the plaintiff.

*Howe, Witters & Harvey* for the defendants.

HEALY, J. The defendants were occupying the premises in contention as a homestead in January, 1912, when the dwelling house thereon was destroyed by fire and they were compelled to go elsewhere to live. Were the premises being kept as their homestead in June, 1912, when the defendant, Victor, delivered to the petitioner a quitclaim deed of the premises in which the wife did not join? If they were, the deed is void as to the homestead. *Martin* v. *Harrington*, 73 Vt. 193, 53 Atl. 1074, 87 Am. St. Rep. 704. So the question is not whether the defendants acquired a homestead, but whether they abandoned

their homestead between January, 1912, and June 14, 1912, the date of the deed.

After the fire they moved from the premises and in May after the making of the lease they went to Rutland to live.

In April the defendant Victor, with the consent and approval of his wife, executed a lease, in which his wife did not join, by its terms leasing the premises for the term of two years. Whether the premises were kept or abandoned as a homestead is largely determined by the intention of the housekeeper or head of the family. *Cushman* v. *Davis,* 79 Vt. 111, 64 Atl. 456; *Thorp* v. *Thorp,* 70 Vt. 46-50, 39 Atl. 245; *Whiteman* v. *Field,* 53 Vt. 554. Without deciding whether the lease was valid, the fact of its execution is pertinent and material upon the question of the intention of the defendant, Victor V., and that it was done with the consent and approval of the defendant, Victoria, is also pertinent if the intention of the wife is material. *Whiteman* v. *Field, supra.* It is unnecessary to decide whether the lease conclusively shows an abandonment, for its execution taken in connection with other facts reported is evidence of abandonment. See *Bemis* v. *Bugbee,* 50 Vt. 216. When the deed was made in June, the lease had been executed, the lessee had given notes for rent, which had been turned over to the petitioner to apply on the old mortgage indebtedness when paid, the lessee was, and for some weeks had been, in possession of the premises, the defendant, Victor V., had attempted at least to part with the present right to occupy the property, to postpone his right of occupancy for two years, and both defendants and their children had moved to Rutland to live. By the deed and the instrument accompanying it the defendant attempted at least to part with the legal title and with the equitable right to redeem for the period of two years. All of these facts tend to show that Victor had abandoned the homestead and was not keeping the property as a homestead when he made the deed. Whether he was then keeping the premises as a homestead is a question of fact not reviewable in this Court if supported by evidence. *Russ* v. *Henry's Estate,* 58 Vt. 388, 3 Atl. 491. Every reasonable intendment is to be made in support of the decree. *Kelly* v. *Seward,* 51 Vt. 436. By reasonable intendment the Chancellor by the statement in his decree, ''it is further adjudged and decreed that no homestead right or interest is outstanding in either of the defendants against the right of orator,'' found as a fact

that the defendant, Victor, had abandoned the homestead and the evidence referred to tends to support that finding.

This part of the decree being fairly subject to such construction, it will be so construed, notwithstanding it might also be construed as being but a legal conclusion from the facts specifically found; for the rule is, that when the record is fairly subject to two constructions, one of which supports the judgment or decree, and the other of which necessitates a reversal, the former construction shall be given. *Cram* v. *Cram,* 33 Vt. 15.

This disposition of the case makes it unnecessary to decide the legal effect of the destruction of the dwelling by fire.

The findings recite that the defendants intended, ''as soon as they were financially able to do so, to return and rebuild the dwelling house and occupy the premises as their homestead.'' It does not appear when this intention began. If the effect of this finding were to negative an abandonment, provided the intention antedated the deed, we could not infer for the purpose of reversing the decree that the intention antedated the deed, but in support of the decree we may and do infer that the intention was subsequent to the deed.

*Decree affirmed and cause remanded. Let a new time for redemption be fixed.*

HEALY, J., dissents.